IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | |
|---|---|
| R.A.<br>*A minor, by and through his Guardian, Steve Altes, on behalf of himself and all others similarly situated*,<br><br>      *Plaintiff*,<br><br>      v.<br><br>EPIC GAMES, INC.,<br><br>      *Defendant*. | No. 5:19-cv-00325-BO |

**DEFENDANT EPIC GAMES, INC.'S REPLY BRIEF
IN SUPPORT OF ITS MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT
PURSUANT TO FED. R. CIV. P. 12(b)(6) AND 9(b)**

Jeffrey S. Jacobson
**DRINKER BIDDLE & REATH LLP**
1177 Avenue of the Americas
41st Floor
New York, New York 10036
Phone: 212-248-3140
Fax: 212-248-3141
jeffrey.jacobson@dbr.com

Robert C. Van Arnam
Andrew R. Shores
**WILLIAMS MULLEN**
301 Fayetteville Street, Suite 1700
Raleigh, North Carolina 27601
Phone: 919-981-4000
Fax: 919-981-4300
rvanarnam@williamsmullen.com
ashores@williamsmullen.com
Local Civil Rule 83.1(d) Counsel

*Counsel for Defendant Epic Games, Inc.*

To avoid enforcement of an arbitration agreement, Plaintiff R.A., in the middle of motion practice, "disaffirmed" his acceptance of the *Fortnite* End User License Agreement ("EULA") that required arbitration. At the same time, R.A. also purported to disaffirm the original EULA he accepted when he began playing *Fortnite* in 2017. Because R.A. made all of his in-game purchases of "Loot Llamas" pursuant to that original EULA, his disaffirmation gave Epic Games an off-ramp to this litigation, which it took by offering R.A. a refund for his purchases. A refund is the only remedy to which a minor is entitled to upon disaffirming a contract. R.A.'s claims therefore are moot, and Plaintiffs' response—contending in their brief ("Opp'n," Dkt. No. 57) that they can still sue for fraud over the transactions R.A. has disaffirmed—is simply wrong. In the cases they cite, courts allowed minors to bring "unfair competition" claims because the defendants *declined to honor* disaffirmation attempts. Epic Games has not, and R.A. has no damages beyond the amounts to be refunded.

The mootness of R.A.'s claims suffices to warrant dismissal, but Plaintiffs' claims have many other fatal flaws, too. They plead consumer fraud, but in both the Complaint and their brief, they refuse to say what R.A. saw or read that allegedly misled him, what he purchased in-game while playing *Fortnite*, what he received with those purchases, what he expected to receive, or in what way the virtual items he received fell short of his reasonable expectations. Their brief asked the Court to apply a "relaxed" particularity standard rather than the well-established Rule 9(b) standard for claims sounding in fraud, but the Fourth Circuit has not recognized a "relaxed" standard and the out-of-circuit cases Plaintiffs cite do not support their request. Further, R.A.'s disaffirmation, and his undertaking not to play *Fortnite* again, preclude Plaintiffs from seeking injunctive relief, and the California law they rely upon does not apply to transactions in virtual currency. Plaintiffs' arguments respecting all of these points, like their response to mootness, relies on inapposite case law—or nothing at all.

For these reasons, as explained further below, the Court should dismiss Plaintiffs' claims. Epic Games' refund offer should cause the Court to grant this dismissal with prejudice. Even if the case is not moot, the Court should dismiss Plaintiffs' claims for numerous other reasons.

# ARGUMENT

## I.  R.A.'S DISAFFIRMATION OF THE 2017 EULA REQUIRES DISMISSAL

Before Epic Games filed its motion ("Opening Br.," Dkt. No. 56), Plaintiffs had not made clear whether they intended to stand by the pre-transfer contention they made to the Central District of California that R.A. has disaffirmed his acceptance of the EULA he accepted in 2017.  Epic Games made clear to the California court that if and when R.A. clarified his wish to disaffirm the EULA, then (1) this necessarily meant he was disaffirming his in-game purchases, which he could not have made without being subject to the *Fortnite* EULA; and (2) Epic Games would honor his request and refund his disaffirmed purchases.  Plaintiffs' brief confirmed that R.A. has disaffirmed the 2017 EULA (Opp'n at 4), and Epic Games hereby restates its offer of a full refund.  R.A.'s claims are moot.

Resisting mootness, Plaintiffs try to liken Epic Games' agreement to refund their money to the "unaccepted settlement offer" at issue in *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016).  *See* Opp'n at 7 n.6.  The analogy does not hold.  In *Campbell-Ewald*, 136 S. Ct. at 667-68, the defendant proposed a settlement and filed a Rule 68 offer of judgment reflecting it, but the plaintiff did not accept the offer.  Here, by disaffirming the EULA after bringing this lawsuit, it was *R.A.* who proposed a resolution of his claims by allowing Epic Games to accept his disaffirmation and provide the refund necessary to consummate it.  The combination of offer by R.A. and acceptance by Epic Games distinguishes this situation from the unaccepted offer in *Campbell-Ewald*.

Importantly, although Epic Games will refund R.A.'s purchases to resolve his particular claims, it in no way concedes that applicable law allowed R.A. to disaffirm his purchases.  Under the North Carolina law that Epic Games asserts should apply here, a minor cannot enjoy an entertainment purchase and then ask for his money back by disaffirming the purchase.  North Carolina law requires minors who disaffirm a contract to "restore whatever part of that which came to [them] under the contract [they] still ha[ve]."  *Fisher v. Taylor Motor Co.*, 107 S.E.2d 94, 97 (N.C. 1959).  Even in California, only in one case—*I.B. ex rel. Fife v. Facebook, Inc.*, 905 F. Supp. 2d 989, 1000 (N.D. Cal.

2

2012)—has a Court appeared to suggest that a minor can disaffirm an in-game entertainment purchase after enjoying its benefits. (The other case on which Plaintiffs rely, *Deck v. Spartz, Inc.*, No. 2:11-CV-1123-JAM, 2011 WL 7775067 (E.D. Cal. Sept. 27, 2011), involved a business venture.) And here, unlike in *I.B.*, R.A. made his purchases using his parents' credit accounts, apparently with their permission. Minors cannot disaffirm purchases they make as authorized agents of their parents.[1]

Assuming R.A. had the right to disaffirm, his decision to do so to avoid arbitration was an election by him. He had to choose between disaffirming or pursuing his fraud claims. There are *no* cases, under any state's law, allowing a minor both to obtain a refund for a disaffirmed purchase and also to sue alleging that the transaction involved fraud. Plaintiffs cite *I.B.*, but the alleged "unlawful" practice the *I.B.* plaintiffs challenged was "Facebook's alleged refusal to recognize [their] rights of disaffirmance." *I.B.*, No. C 12–1894 CW, 2013 WL 6734239, at *6 (N.D. Cal. Dec. 20, 2013); *see also I.B.*, 905 F. Supp. 2d at 1011. Plaintiffs also cite *Gillis v. Whitley's Discount Auto Sales, Inc.*, 319 S.E. 2d 661, 667 (N.C. App. 1984), but *Gillis* similarly confirmed that a disaffirmed transaction yields only a refund. The minor in *Gillis* originally tried to pursue a consumer fraud claim, but as Plaintiffs' brief admits, he "abandoned" it. Opp'n at 6. *Collier v. Bryant*, 719 S.E.2d 70, 82 (N.C. App. 2011), expressly precluded seeking "double redress," and even in *dicta* suggested only that a minor could bring additional claims if necessary where "rescission of the contract does not place the injured party *in statu quo*, as where he has suffered damages which cancellation of the contract cannot repair." Here, a refund will place R.A. in the position he would have occupied but for his in-game purchases. Plaintiffs therefore have no support at all for their naked assertion that they are "not limited by the remedies for disaffirmance [and] may also seek separate statutory remedies." Opp'n at 6.

Because Plaintiffs cannot dispute that disaffirming *transactions* yields only a refund, they try to argue that R.A. is disaffirming only the *Fortnite* EULA, not the in-game purchases he made pursuant

---

[1] Epic Games' opening brief (at 11 n.4) demonstrated with citations that a minor cannot disaffirm transactions he made as an authorized user on a parent's credit card. Plaintiffs' only response was to contend that "Defendant cite[d] no authority" for this. Opp'n at 7 n.7. That is not true.

to the EULA. *See* Opp'n at 6-8. The EULA, however, is hardly an "ancillary contract that has nothing to do with [Plaintiffs'] claims." *Id.* at 5. It makes clear in its first paragraph that it governs "any … purchases you make through the Software." Dkt. No. 28-1 at 1. It then describes how purchases made with "Game Currency" become part of the player's limited license. *See id.* at 2-3 (¶ 4, "Game Currency and Content"). Alternatively, Plaintiffs suggest that R.A. can disaffirm only the EULA's Governing Law clause. *See* Opp'n at 8 ("R.A.'s disaffirmance … matters only to the extent that it affects whether the choice of law clause is at issue."). No court, however, allows a minor to disaffirm only selected parts of a contract. *See, e.g.*, *C.M.D. ex rel. De Young v. Facebook, Inc.*, 621 F. App'x 488, 489 (9th Cir. 2015) (It is "a longstanding and general rule … that 'a party cannot apply to his own use that part of the transaction which may bring to him a benefit, and repudiate the other, which may not be to his interest to fulfill.'") (citation omitted); *E.K.D. ex rel. Dawes v. Facebook, Inc.*, 885 F. Supp. 2d 894, 899 (S.D. Ill. 2012) ("California law is in accord with the equitable principle that minors, if they would disaffirm a contract, must disaffirm the entire contract, not just the irksome portions.") (citation and internal quotation marks omitted); *Paster v. Putney Student Travel, Inc.*, No. CV 99-2062 RSWL, 1999 WL 1074120, at *1 (C.D. Cal. June 9, 1999) (Minor "cannot accept the benefits of a contract and then seek to … escape the consequences of a clause that do not suit her.").

When the California court deferred ruling on whether R.A. had disaffirmed or could disaffirm the 2017 EULA, this left Plaintiffs with a binary choice: sue in tort over R.A.'s in-game purchases, but be subject to the EULA (including its choice of law clause), or disaffirm the EULA and accept a refund as the only remedy. Plaintiffs made their choice—disaffirmation—and Epic Games has offered a refund. R.A.'s in-game purchases have become a nullity and he cannot bring fraud claims respecting them.[2] He certainly cannot sue as a purported representative of a class. His claims are moot.

---

[2] It is unclear why Plaintiffs cited *In re Quinones*, No. 12-46834, 2015 WL 9412851, at *12 (Bankr. N.D. Cal. Dec. 18, 2015), or *Beavertail, Inc. v. United States*, No. 4:12-CV-610-BLW, 2016 WL 5662013, at *3 (D. Idaho Sept. 29, 2016). Those cases had nothing to do with disaffirmation. The courts only analyzed whether claims sounded in tort or contract for purposes of awarding fees or determining jurisdiction.

4

## II. R.A. HAS NO UNJUST ENRICHMENT CLAIM

Plaintiffs' brief makes the tautological argument that because R.A. disaffirmed the EULA, no contract governs his purchases, and he therefore can sue in quasi-contract on an "unjust enrichment" theory. *See* Opp'n at 22. None of the cases Plaintiffs cite support this contention.[3] *T.K. v. Adobe Systems, Inc.*, No. 17-CV-04595-LHK, 2018 WL 1812200, at *10 (N.D. Cal. Apr. 17, 2018), allowed the plaintiff to sue for unjust enrichment only because the defendant declined to honor an attempted disaffirmation. This just confirms that the remedy for disaffirmation is a refund. Adobe refused to refund that plaintiff's money, but a plaintiff who is offered a refund cannot claim "unjust enrichment." Nor can a plaintiff who agreed to a contract sue in quasi-contract after purportedly disaffirming it.

## III. PLAINTIFFS' CLAIMS FAIL TO SATISFY RULE 9(b)

The mootness brought about by Epic Games' acceptance of R.A.'s disaffirmation suffices to warrant dismissal. Even were that not the case, however, R.A.'s claims fail for another reason: They all sound in fraud but do not satisfy Rule 9(b). Plaintiffs' Complaint, in its section labeled "Rule 9(b) Allegations" (¶¶ 105-11) provides no details about R.A.'s alleged in-game purchases or anything he read or saw that he contends was "deceptive." Plaintiffs' brief seems to concede that they have not satisfied Rule 9(b) and asks the Court to apply a "relaxed particularity" standard. Opp'n at 15. The Fourth Circuit has not adopted such a standard. *See Hongda Chem. USA, LLC v. Shangyu Sunfit Chem. Co., Ltd.*, No. 1:12CV1146, 2016 WL 4703725, at *5 (M.D.N.C. Sept. 8, 2016). Even were the Court inclined to believe that some cases warrant a relaxed Rule 9(b) standard, this case does not.

Although Plaintiffs and Epic Games presumably both know when R.A. purchased *Fortnite*'s virtual currency, "V-Bucks," and which Loot Llamas R.A. purchased with his V-Bucks, only R.A. knows what he read and saw before making his purchases, what he purportedly expected to receive in

---

[3] In *Reyes v. Wells Fargo Bank, N.A.*, No. C-10-01667 JCS, 2011 WL 30759, at *18 (N.D. Cal. Jan. 3, 2011), the Court found that plaintiffs were not entitled to restitution of most payments under an agreement. *Adams v. Moore*, 96 N.C. App. 359, 362, 385 S.E.2d 799, 801 (1989) states the elements of unjust enrichment but does not discuss how the existence of an actual contract forecloses that claim.

5

his Loot Llamas, and which specific purchases fell short of his asserted reasonable expectations. Yet, he alleges none of these facts. Plaintiffs reference different statements they say accompanied "a variety of different Llama purchase options," Opp'n at 16, then claim that R.A. saw "[d]escriptions like the above." *Id.* at 17. They do not specify a single statement upon which R.A. *actually* relied.

The out-of-Circuit cases Plaintiffs cite in support of a "relaxed particularity" standard do not match R.A.'s situation. In *King v. Ocwen Loan Servicing, LLC*, No. EDCV 17-1902 JGB (KKx), 2017 WL 10562567, at *4 (C.D. Cal. Dec. 8, 2017), for example, the plaintiff alleged that Ocwen required him to submit an application "numerous times" and that Ocwen "intentionally misrepresented the location of Plaintiff's loan modification applications." The Court found that the location of plaintiff's previous applications was solely within Ocwen's knowledge. Here, by contrast, all the relevant knowledge is solely within *Plaintiffs'* knowledge, not Epic Games' knowledge.

The other case Plaintiffs cite, *United States v. Cathcart*, No. C 07-4762 PJH, 2008 WL 4279717, at *2 (N.D. Cal. Sept. 15, 2008), demonstrates why Plaintiffs' Complaint could not satisfy a "relaxed" standard even if one applied. In *Cathcart*, the court found that when facts are uniquely within the defendant's knowledge, "the particularity requirement may be satisfied if [plaintiffs'] allegations are accompanied by a statement of the facts on which the belief is founded, including the source of the information and the reasons for the belief." *Id.* Plaintiffs' Complaint provides no such statement. For that reason, they cannot satisfy Rule 9(b) even under their "relaxed particularity" theory.

It is not a mystery why Plaintiffs do not want to plead details of R.A.'s transactions. Once a spotlight is shone upon R.A.'s idiosyncratic purchase history, his personal contentions about what he saw and relied upon, and what he received in relation to his expectations, it would become impossible for Plaintiffs to contend that a certifiable class exists in this case. For this reason, they shift to alleging that Epic Games "fails to disclose any odds," Opp'n at 4, and contend that a relaxed standard should apply because this is an "omission" case. Plaintiffs still cite no legal requirement for Epic Games to have disclosed these odds, however, and there is none. *See* Opening Br. at 17-18. Just as importantly,

6

Rule 9(b) requires Plaintiffs to explain the purported materiality of any omission, which they cannot do without explaining what R.A. expected to receive and actually received (*i.e.*, how many Loot Llamas he purchased that had a chance to "upgrade" and the extent to which they upgraded).

Courts relax the pleading standard in "omission" cases, moreover, only to the extent that "a plaintiff cannot plead either the specific time of [an] omission or the place, as he is not alleging an act, but a failure to act." *UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc.*, 117 F. Supp. 3d 1092, 1107 (C.D. Cal. 2015) (dismissing fraud claim) (emphasis added) (citation and internal quotation marks omitted). Plaintiffs' vague assertion that R.A. "believed that he had a meaningful chance of receiving the loot represented by Epic as being in the loot boxes," Opp'n at 16, *citing* Am. Compl. ¶¶ 21, 107, falls short. So does Plaintiffs' discussion of "thought bubbles," *id.* at 16-17, unaccompanied by any allegation that R.A. saw thought bubbles or that Loot Llamas he purchased did not yield the items depicted. Plaintiffs' bare allegation that the odds of a Loot Llama containing the "desired loot" (without saying what R.A. "desired") are "virtually nil," *id.* at 17, does not suffice, particularly where even the online comments Plaintiffs cited include numerous comments from *Fortnite* players who were satisfied with what they received. *See* Opening Br. at 19-20.

As a fallback, Plaintiffs try to argue that claims under the North Carolina Unfair and Deceptive Trade Practices Act ("NCUDTPA") are not subject to Rule 9(b) at all. Opp'n at 19. This is wrong. The Rule 9(b) standard "extends to section 75-1.1 claims based on deceptive representations," as Plaintiffs' claims are. *Topshelf Mgmt., Inc. v. Campbell-Ewald Co.*, 117 F. Supp. 3d 722, 730 (M.D.N.C. 2015). The plaintiff in *Topshelf* found one "ten-year-old case" involving a commercial transaction that declined to apply Rule 9(b) to a NCUDTPA claim, *id.* at 729, but the *Topshelf* court explained multiple reasons why that case was wrongly decided and noted numerous cases holding Rule 9(b) applicable. *See id.* at 729-31. Plaintiffs rely only on the same case—*CBP Resources, Inc. v. SGS Control Services, Inc.*, 394 F. Supp. 2d 733, 739 (M.D.N.C. 2005)—that *Topshelf* declined to follow. Numerous courts have agreed with *Topshelf* in holding that NCUDTPA claims alleging deceptive

7

conduct must satisfy Rule 9(b). *See, e.g., Packrite*, *LLC v. Graphic Packaging Int'l, Inc.*, No. 1:17CV1019, 2018 WL 4112827, at *7 (M.D.N.C. Aug. 29, 2018) ("Where … a party raises a UDTPA claim 'alleging detrimental reliance on false or deceptive representations,' Rule 9(b) applies.") (quoting *Topshelf*); *AVX Corp. v. Corning Inc.*, No. 5:15-CV-543-FL, 2018 WL 4113333, at *10 (E.D.N.C. Aug. 28, 2018) ("misrepresentation under North Carolina law must be pleaded with particularity"); *Di Sciullo v. Griggs & Co. Homes,* No. 2:14-CV-18-FL, 2015 WL 6393813, at *12 (E.D.N.C. Oct. 22, 2015) (same); *Randolph v. Wells Fargo Bank, Nat'l Ass'n*, No. 4:12-CV-190-BO, 2013 WL 12158995, at *2 (E.D.N.C. Jan. 29, 2013) (analyzing NCUDTPA claim under 9(b) standard).

## IV.   EVEN IF R.A. CAN SUE UNDER CALIFORNIA LAW, THE "CLASS" CANNOT

There is no question at all that Rule 9(b) applies to Plaintiffs' claims under California consumer fraud law. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (rejecting arguments that Rule 9(b) should not apply to claims under California's Unfair Competition Law and Consumers Legal Remedies Act or "CLRA"). Plaintiffs' California claims, therefore, should fail for the same reasons as their claims under the NCUDTPA. Further, even if R.A.'s disaffirmation of the EULA allows *R.A.* to avoid both arbitration and application of the EULA's North Carolina choice of law clause, no member of any putative class who has not similarly disaffirmed the EULA may do so.

Plaintiffs' brief has no answer to the problem that all *Fortnite* players who agreed to the current EULA must arbitrate their claims and cannot participate in Plaintiffs' putative class action. Even *Fortnite* players who ceased playing before rollout of the current EULA, or who opted out of arbitration, still are subject to the requirement in every version of the *Fortnite* EULA that they must litigate claims under North Carolina law. Plaintiffs ask the Court not to enforce the choice of law clause, and to let other California residents who are not subject to arbitration sue under California law. *See* Opp'n at 11. A North Carolina-based company like Epic Games, however, has a clear interest, and is well within its rights, to insist that those who choose to play its video game must agree to have their claims adjudicated under North Carolina law.

Plaintiffs, who contracted online with a North Carolina company and then played a game online, cannot rely on *Lloyd v. Navy Federal Credit Union*, No. 17-cv-1280-BAS, 2018 WL 1757609 (S.D. Cal. Apr. 12, 2018). In *Lloyd*, the plaintiffs patronized the bank's brick-and-mortar branches in California. The defendant's physical presence in California, and the plaintiffs' use of those branches, is what caused the *Lloyd* court to allow the plaintiff to sue under California law, notwithstanding a Virginia choice of law clause in their banking agreements. *See id.* at *6. The defendant in *Walter v. Hughes Communications, Inc.*, 682 F. Supp. 2d 1031 (N.D. Cal. 2010), likewise had California-based employees who installed equipment in California homes. Neither case held that merely allowing California residents to access a game online suffices to override a North Carolina company's North Carolina choice of law clause in the contract pursuant to which it made the game available.[4]

## V. PLAINTIFFS CANNOT PURSUE CLAIMS UNDER THE CLRA BECAUSE LOOT LLAMAS ARE NOT A "GOOD" OR "SERVICE"

Epic Games demonstrated in its opening brief that California law does not consider transactions in virtual currency to be "goods" or "services," and therefore are not actionable under the CLRA. Mot. at 21-22. Plaintiffs respond by arguing that *Fortnite* itself is a good or service. *See* Opp'n at 1, 14. Ironically, Plaintiffs cite the EULA they have disaffirmed, and which they elsewhere contend is "irrelevant" to their in-game purchases, to argue that in-game purchases constitute "Services." *Id.* at 15. The EULA, however, in its opening paragraph, explicitly distinguishes between the "Software" and "Services" that Epic Games offers, on one hand, and "purchases you make through the Software" on the other. Whether Plaintiffs could sue over a misrepresentation about the *Fortnite* game itself is

---

[4] Plaintiffs' citation to *Aral v. Earthlink, Inc.*, 134 Cal. App. 4th 544 (2005) also is distinguishable. In *Aral*, the California appellate court declined to enforce a Virginia choice of law clause that had the effect of abrogating consumers' ability to pursue class actions. Applying North Carolina law would not have that effect, although Plaintiffs' class allegations must fail for other reasons. In a long footnote, Plaintiffs ask the Court not to conduct any choice-of-law analysis until the class certification stage. *See* Opp'n at 8-9 n.9. Only in one of Plaintiffs' cited cases, however—*Ramirez v. Baxter Credit Union*, No. 16-cv-03765-SI, 2017 WL 1064991 (N.D. Cal. Mar. 21, 2017)—were the plaintiff's claims covered by a contractual choice of law clause, and the clause at issue did not include an arbitration requirement, as Epic Games' EULA does. Epic Games' opening brief (at 13) cited multiple cases in which courts dismissed claims at the pleading stage because of contractual choice-of-law clauses.

9

not at issue; the Amended Complaint alleges no problems with the free *Fortnite* game. Instead, Plaintiffs complain only about R.A.'s purchases of "V-Bucks," the in-game currency that allowed R.A. to acquire "Loot Llamas" to enhance his game play. Such virtual currency transactions fall outside the scope of the CLRA. *See, e.g., I.B.*, 905 F. Supp. 2d at 1008 (dismissing CLRA claim because Facebook Credits constituted digital currency not covered by CLRA); Mot. at 22 (citing other cases so holding).

## VI.     PLAINTIFFS CANNOT PURSUE INJUNCTIVE RELIEF

Even when applying California law, courts recently have clamped down on plaintiffs' ability to seek injunctive relief in connection with consumer fraud claims. Plaintiffs who allege fraud necessarily are aware of the circumstances about which they complain. They therefore cannot usually claim to be at risk of future harm absent injunctive relief, absent an ability to claim that they "may reasonably, but incorrectly, assume the product was improved." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 970 (9th Cir. 2018). The plaintiff in *Davidson*, in other words, contended she might be misled by the *same "flushable" label* in the future. Here, however, R.A. contends he would buy Loot Llamas in the future only if he knows that Epic Games has changed its practices in the manner he prefers (*i.e.*, by disclosing the actual contents of Loot Llamas or disclosing the odds of receiving particular items). In circumstances like R.A.'s, where plaintiffs can learn *before making a purchase* whether the defendant has changed a prior practice, the reasoning in *Davidson* does not apply. *See, e.g.*, *Cordes v. Boulder Brands USA, Inc.*, No. CV 18-6534 PSG (JCx), 2018 WL 6714323, at *4 (C.D. Cal. Oct. 17, 2018); Mot. at 23-24 (citing cases). Here, R.A.'s ability to seek injunctive relief is even less tenable because, again to avoid arbitrating his claims, R.A. has declared under oath that he will not return to playing *Fortnite*.

\*\*\*

For all these reasons, and as stated in its opening brief, Epic Games respectfully requests that this Court dismiss Plaintiffs' Amended Complaint in its entirety. Plaintiffs should specify which transactions R.A. wishes to disaffirm, and Epic Games will provide a refund for those transactions.

10

Respectfully submitted this 20th day of November 2019.

/s/ Jeffrey S. Jacobson
Jeffrey S. Jacobson
**DRINKER BIDDLE & REATH LLP**
1177 Avenue of the Americas
41st Floor
New York, New York 10036
Phone: 212-248-3140
Fax: 212-248-3141
jeffrey.jacobson@dbr.com

Robert C. Van Arnam
Andrew R. Shores
**WILLIAMS MULLEN**
301 Fayetteville Street, Suite 1700
Raleigh, North Carolina 27601
Phone: 919-981-4000
Fax: 919-981-4300
rvanarnam@williamsmullen.com
ashores@williamsmullen.com
Local Civil Rule 83.1(d) Counsel

*Counsel for Defendant Epic Games, Inc.*

## CERTIFICATE OF SERVICE

This is to certify that copies of the foregoing were electronically filed on this day with the Clerk of Court using the CM/ECF system which will automatically send notice to the following:

>Daniel K. Bryson
>Patrick M. Wallace
>Whitfield, Bryson & Mason LLP
>900 W. Morgan Street
>Raleigh, North Carolina 27603
>Email: dan@wbmllp.com
>Email: pat@wbmllp.com
>
>*Counsel for Plaintiff*

This the 20th day of November, 2019.

/s/ Jeffrey S. Jacobson
Jeffrey S. Jacobson
**DRINKER BIDDLE & REATH LLP**
1177 Avenue of the Americas
41st Floor
New York, New York 10036
Phone: 212-248-3140
Fax: 212-248-3141
jeffrey.jacobson@dbr.com